NIKHIL BODHANKAR
864 Hereford Way
Niskayuna, NY 12309
3153959981
nikhilub@gmail.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NIKHIL BODHANKAR,

      Plaintiff,

vs.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,
20 MASSACHUSETTS AVE NW,
WASHINGTON DC 20529

      Defendant

Case No.: 1:19-cv-706 (MAD/CFH)

COMPLAINT

JURY TRIAL DEMANDED

## COMPLAINT

### JURISDICTION

1. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101 et. Seq., and the Administrative Procedure Act, 5 U.S.C. § 701 et. Seq., both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C § 1331.

### VENUE

2. This Court has venue over this matter under 28 U.S.C § 1331(c)(1) in that the Plaintiff resides and is domiciled in the judicial district.

### REMEDIES EXAUSTED

3. Plaintiff exhausted all remedies with USCIS as evidenced in Exhibit 1 through 6.

COMPLAINT - 1

**STANDING**

4. Plaintiff has a legally protected interest in a decision by the USCIS on the petition for an Immigrant Worker which is not arbitrary or capricious and (1) the invasion of this right has caused Plaintiff and Plaintiff's wife concrete and particularized injury in that as a result of this invasion Plaintiff has been barred from even being considered for lawful admission to the United States for permanent residence in the USCIS's discretion; (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Plaintiff's immigrant visa petition which prevents Plaintiff from being considered for permanent residency and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will give Plaintiff and Plaintiff's wife an opportunity to gain permanent residence and will give an opportunity to reside together with their two children who are minors and are US born citizens, which Plaintiff and Plaintiff's wife are lacking. *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1259-61 (11th Cir. 2014) (viewing "deprivation of an opportunity to apply for adjustment of status" as injury), *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 637-38 (6th Cir. 2013) (viewing "the loss of an opportunity to become a permanent resident" as injury), *Matushkina v. Nielsen*, 877 F.3d 289, 293 (7th Cir. 2017) (loss of an opportunity to be granted a visa conveyed standing, even if the ultimate issuance of a visa was not certain). Accordingly, the Plaintiff has a standing to complain of this action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61(1992).

**BACKGROUND**

5. SMRT Inc. filed an employment-based immigrant visa petition (I-140) along with concurrent filing of adjustment of status (I-485) with the USCIS (United States Citizenship and

COMPLAINT - 2

Immigration Services) to be classified as an alien of extraordinary ability for beneficiary that is the Plaintiff under 8 U.S.C. § 1153(b)(1)(A) on date May 10, 2017 (USCIS Received date May 11, 2017). (Exhibit 1)

6. USCIS Nebraska Service Center issued a RFE (Request for Evidence) on March 27, 2018. (Exhibit 2)

7. A timely response was filed and received by USCIS Nebraska Service Center on June 14, 2018. (Exhibit 3)

8. A denial by USCIS Nebraska Service Center was issued on July 3, 2018. (Exhibit 4)

9. The basis of denial was that the Plaintiff met one (1) out of three (3) minimum criteria as set forth in 8 C.F.R. § 204.5(h)(3)(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought. Therefore, was declared not eligible for final merits determination.

10. A brief in support of appeal to the USCIS Administrative Appeals Office (AAO) was filed on August 1, 2018. (Exhibit 5)

11. A dismissal was issued by USCIS AAO on April 30, 2019. (Exhibit 6)

12. USCIS AAO agreed that the Plaintiff met (3) three minimum criteria as set forth in 8 C.F.R. § 204.5(h)(3), namely, 8 C.F.R. § 204.5(h)(3)(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media; 8 C.F.R. § 204.5(h)(3)(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; Accepted the USCIS Nebraska Service Center's determination of (1) One criteria as stated previously. Therefore, USCIS AAO declared that the Plaintiff qualified for final merits determination.

13. The basis for dismissal was based on USCIS AAO evaluating the totality of the evidence in the contest of the final merits determination to determine if the Plaintiff's accomplishments are sufficient to demonstrate that the Plaintiff has extraordinary ability in the field of endeavor and whether the petitioner is one of that small percentage who has risen to the very top of the field of endeavor and has sustained national or international acclaim.

14. 8 U.S.C. § 1153(b)(1)(A) provides statuary definition of extraordinary ability priority workers under preference allocation for employment-based immigrants.

> (A) **Aliens with extraordinary ability** An alien is described in this subparagraph if—
> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

15. In the responses to RFE and denial letters, petitioner reminded USCIS of the "preponderance of evidence" evidentiary standard used in a burden of proof analysis. Exhibit 5, Page 2 of 53. Under the preponderance standard, the burden of proof is met when the party with the burden convinces the fact finder that there is a greater than 50% chance that the claim is true. USCIS Policy Memorandum, "Requests for Evidence and Notices of Intent to Deny," PM-602-0085, at 2 (June 3, 2013); *see also Matter of Skirball Cultural Center,* 25 I&N Dec. 799 (AAO 2012). Notably, the petitioner is not required to prove each element of the requested classification beyond a reasonable doubt, or even by clear and convincing evidence. Even if USCIS has some doubt as to the evidence establishing eligibility, as long as the petitioner has provided relevant and credible evidence suggesting that the assertion is "probably true" or more likely true than not, the petitioner is entitled to the classification sought.

COMPLAINT - 4

16. The agency simply used its typical template[1] drafted and approved by agency headquarters and asked for either the same or more information that was either already submitted in the initial petition or addressed by responding to the concerns raised by the agency.

17. This case involves review under the Administrative Procedure Act of a decision of the United States Citizenship and Immigration Services (USCIS) denying a petition by SMRT, Inc. who's beneficiary is Plaintiff, Nikhil Bodhankar, to be classified as an alien of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A) so as to be able to contribute his electrical engineering design expertise which will substantially benefit prospectively the United States, and will allow to continue contributing in national engineering and technical committees holding paramount the health, welfare and safety of the public.

18. Infrastructure is the backbone of United States of America. Infrastructure enables trade, powers businesses, connects workers to their jobs, creates opportunities for struggling communities and protects the nation from an increasingly unpredictable natural environment. From private investment in telecommunication systems, broadband networks, freight railroads, energy projects and pipelines, to publicly spending on transportation, water, buildings and parks, hospitals, mission critical buildings infrastructure is also the backbone of a healthy economy. The design of almost every major engineering project in the nation is led by a Licensed Professional Engineer which comes under consulting engineering expertise. A recent example is the brand new $4 Billion Tappan Zee Bridge, an engineering marvel, is led by Project Director Jamey Barbas, P.E. licensed in the State of New York. Under her

[1]https://www.uscis.gov/sites/default/files/USCIS/Outreach/Draft%20Request%20for%20Evidence%20%28RFE%29%20Template%20for%20Comment/E11_RFE_Template_1-10-11.pdf

leadership, multiple discipline specific licensed professional engineers, such as electrical engineers, structural engineers, civil engineers to name a few, designed and contributed towards the project's success.

19. Consulting Engineering benefits the United States. Contributions of Licensed Professional Engineers who are typically working behind the scenes is harder to see compared to the more popular professions such as sports, athletics, motion pictures, arts and entertainment industry.

20. National Society of Professional Engineers (NSPE) members are comprised of professional engineers from not just electrical engineering discipline but Agricultural and Biological Engineering, Architectural Engineering, Chemical, Civil, Control Systems, Electrical and Computer, Environmental, Fire Protection, Industrial and Systems, Mechanical, Metallurgical and Materials. Mining and Mineral Processing, Naval Architecture and Marine, Nuclear, Petroleum and Structural[2].

21. American Council of Engineering Companies (ACEC) represents thousands of engineering companies and are the voice of the engineering industry throughout the nation. ACEC is a federation of 52 state and regional councils representing more than 600,000 engineers, architects, land surveyors and other specialists.[3]

22. Both organizations, ACEC and NSPE, are widely-known organizations representing Professional Engineering, nationally and internationally.

23. As will quickly become apparent, the denial of the petition was arbitrary and capricious in the extreme in that the USCIS's weird conclusion that "…[National Society of Professional

---

[2] https://ncees.org/engineering/pe/
[3] https://www.acec.org/about/

COMPLAINT - 6

Engineers] NSPE [National] Young Engineering of the Year is awarded by a national society…." are not "national or international acclaim". Further, USCIS claims that "sufficient evidence" was not submitted for their evaluation on whether the recognition is of national nature or not. Exhibit 6 at page 4 of 7. This claim has no legal basis, since multiple evidences were submitted such as but not limited to – Copies of social media engagement from professional organizations demonstrating national recognition, Syracuse University L.C. Smith College of Engineering press release, conference program confirming winning of the national award, and letter from a sitting New York State Senator James N. Tedisco and from a sitting United States Senator Kirsten Gillibrand. Exhibit 5 at pages 29 thru 47 and Exhibit 3 at pages 170 thru 245.

24. National Society of Professional Engineers (NSPE) and American Council of Engineering Companies (ACEC) are the two major nationally renowned organizations that represent Consulting and/or Professional Engineering (also known as P.E.). Professional Engineers are licensed engineers in the United States, similar to licensed attorney or licensed medical professional. In addition to NSPE's National Young Engineer of the Year award (Awarded to only ONE (1) in a given year), Plaintiff was awarded 2012 National Young Engineer of the Year by ACEC. Evidence of the 2012 national honor was also submitted to USCIS that includes letter of commendation from Congressman Paul D. Tonko, United States House of Representative, Exhibit 1 page 376 thru 379, and citation by several experts.

25. It is evident that USCIS failed to recognize the profession "Professional Engineer" and/or "Consulting Engineer" and the national level importance including the reputation of the organizations that represents licensed Professional Engineers.

COMPLAINT - 7

26. In the *Matter of M-D-*, ID# 2590356 (AAO Apr. 2, 2019), AAO sustained immigration petition for extraordinary ability for a fashion model and concluded that the fashion model will substantially benefit prospectively the United States. In that, AAO recognized the magazines such as *Time, Vogue, Elle and Glamour* as sustained national or international acclaim.

27. USCIS failed to recognize that "Professional Engineering" or "Consulting Engineering" magazines or journals are not something that sells on regular newsstands and are indeed widely circulated in the professional engineering community. Plaintiff's achievements, contributions or publications in Engineering, Inc. magazine, PE Magazine, Electrical Construction and Maintenance (EC&M) journal, IEEE (Institute of Electrical and Electronics Engineers) Standards publication, Syracuse University news, Albany Business Review news, Social media engagement and support letters from experts and recognition from bi-partisan legislative representatives of the citizens of the United States, in totality, are evidences of national or international acclaim of the Plaintiff in the field of endeavor.

28. Inexplicably, USCIS states that a nationally recognized honor for young outstanding professionals "are limited … exclude thousands of practiced and distinguished persons…" and therefore not indicative of national or international acclaim. Indeed, the application of this reasoning would even make a Juvenile Oscar, (Winners such as the legendary Shirley Temple for her outstanding contribution as a juvenile performer in motion pictures), not a nationally recognized award, since it too was awarded only to members of the academy who were juvenile/young actors. Similarly, this reasoning would apply to an award of the magnitude of Oscars for Best Actress or Best supporting Actress as not nationally recognized

award, since the category is restricted to women in leading roles or supporting roles of handful of movies in a given year.

29. On April 5, 2005, USCIS AAO reversed a denial for a fashion model (Case number WAC0200553413). On April 27, 2015, USCIS AAO reversed a denial for a fashion denim designer (Case citation not found on non-precedent decision). In 2012, a playboy playmate was granted extraordinary ability permanent residency by USCIS[4]. In 2012, a pin-up burlesque model was granted extraordinary ability permanent residency by USCIS[5]. Glenn Boswell - a stunt performer and director, Daniel Riffner - Cirque du Soleil acrobat, Kinan Azmeh - Clarinetist[6], a German Gymnast, a Gymnastics Coach (*Matter of X-N-*, ID# 15507 (AAO Apr. 20, 2016),  Judo Karate athlete (*Matter of K-S-Y-*, ID# 14269 (AAO Mar. 9, 2016), a basketball player (*Matter of D-S-*, ID# 2025090 (AAO Feb. 13, 2019)) were all granted extraordinary ability permanent residency by USCIS. The New York Times published an article where reporter Miriam Jordan wrote "....*USCIS has made a habit of making requests for further evidence before deciding the fate of an applicant. The lawyers also said that scholars and scientists have a tougher time winning approval than models, actors and athletes*". The point of stating these facts is not to undermine professions or cause a negative outlook towards any professions that qualify for extraordinary ability, but to show that USCIS has shown its lack of understanding of fields of endeavor that are not popular in the media.

---

[4] https://www.reuters.com/article/usa-visa-extraordinary-idUSL2E8HT01Y20120629
[5] https://www.lexisnexis.com/legalnewsroom/immigration/b/outsidenews/posts/canadian-pin-up-model-wins-extraordinary-ability-green-card-for-burlesque
[6] https://www.nytimes.com/2018/03/04/us/melania-trump-einstein-visa.html

Unfortunately in this country, the public perception of engineering needs to improve[7] as it is perceived as a lackluster profession[8]. Regardless, USCIS has failed to understand all the details of successes, achievements and contributions of the Plaintiff submitted by immigration attorneys representing SMRT. Instead, USCIS has undermined the licensed or consulting engineering profession by drawing unfounded and unfair conclusions that the profession's national organization representation and their annual national awards are not representative of national or international acclaim.

30. USCIS denied extraordinary ability petition to an anti-cancer vaccine research scholar in health services. *CHURSOV v. Miller*, Dist. Court, SD New York 2019, No. 18-cv-2886 (PKC). The court ruled that "*USCIS similarly failed to adequately consider the totality of the submission when evaluating evidence of major significance in the field.*" It also added that "*the agency failed to examine the opinion letters for evidence of major significance, directly contradicting its policy manual that states…*". In concluding, the court remanded the matter back to USCIS. This is a very recent case (Opinion and Order 13th May 2019) that shows USCIS's inability to recognize the accomplishments of the scientific community in the same vein as the more public and popular professionals cited above.

31. Winning an award at the national or international level in consulting engineering is based on a review of technical and scholarly contribution of the candidate by a committee of experts in the consulting engineering industry.

---

[7] National Academy of Engineering – Messages for improving public understanding of engineering, 2008. ISBN 978-0-309-38693-7.
[8] Harris Interactive, American Perspectives on Engineers and Engineering. Poll conducted for the American Association of Engineering Societies. Final report, February 13, 2004.

COMPLAINT - 10

32. USCIS is disregarding the obvious acclaim that experts in the engineering profession have bestowed upon the Plaintiff. One can only speculate if USCIS is abusing power by using the highly discretionary subjective review for denying immigration benefits to petitioners. For some reason beyond rational argument, the national recognition given by reputed national organizations that uses technical experts to make determination is not enough for USCIS to deem the awards as a national recognition. Indeed, USCIS used it's highly discretionary and subjective evaluation to erroneously determine that Plaintiff is not recognized nationally with complete disregard to the decision made by a committee of national experts.

33. The denial is arbitrary and capricious as the agency failed to consider relevant factors and ignored or lacked the understanding of all facts and evidences. Since the USCIS's failure to credit national recognition and failure to recognize expert testimonies including independent testimonies, that Plaintiff has risen to the top of the field of endeavor was the sole basis for denial of the petition, and the agency conceded that Plaintiff did satisfy at least three of these criteria, USCIS's nonsensical refusal to recognize the Plaintiff's awards and recognition in the field of consulting engineering profession solely "because [national awards] are limited … exclude thousands of practiced and distinguished persons…" renders the decision denying this petition arbitrary, capricious and in fact, preposterous.

### CAUSE OF ACTION

I.  **THE DECISION SHOULD BE HELD UNLAWFUL AND SET ASIDE AS ARBITRARY AND CAPRICIOUS AND ABUSE OF DISCRETION**

A.  **THE DECISION THAT NATIONAL AWARDS FROM TWO NATIONAL ORGANIZATIONS THAT REPRESENT CONSULTING AND LICENSED ENGINEERING PROFESSION IS NOT NATIONALLY RECOGNIZED OR EVIDENCE OF NATIONAL ACCLAIM SIMPLY BECAUSE ELIGIBILITY FOR IT IS LIMITED TO EARLY CAREER PROFESSIONALS THAT COMPETE FOR**

COMPLAINT - 11

IT IS ARBITRARY, CAPRICIOUS AND ABUSE OF DISCRETION BECAUSE IT IS IRRATIONAL AND COMPLETELY UNRELATED TO THE PLAIN MEANING OF "NATIONALLY OR INTERNATIONALLY RECOGNIZED".

B. THE DECISION THAT PLAINTIFF HAS NOT RISEN TO THE VERY TOP OF THE FIELD OF ENDEAVOR BY DISREGARDING THE SUBSTANCIAL EVIDENCE THAT INCLUDES EXPERT TESTIMONIES – INDEPENTANT AS WELL AS THOSE WHO HAVE KNOWN THE PLAINTIFF PROFESSIONALLY IN THE FIELD OF ENDEAVOR, MEDIA PRESS RELEASES AND NATIONALLY CIRCULATED JOURNALS/MAGAZINES SUCH AS ENGINEERING, INC. , PE MAGAZINE, CSE (CONSULTING SPECIFYING ENGINEER) MAGAZINE TO NAME A FEW, SOCIAL MEDIA ENGAGEMENT, AND UNWAVERING SUPPORT FROM BUSINESS LEADERS AS CRITICAL OR LEADING MEMBERS OF THE ARCHITECTURE AND ENGINEERING COMMUNITY AND RECOGNITION LETTERS FROM BI-PARTISAN LEGISLATIVE REPRESENTATIVES OF THE CITIZENS OF THE UNITED STATES OF AMERICA IS ARBITRARY, CAPRICIOUS AND ABUSE OF DISCRETION BECAUSE SUCH EVIDENCE DOES IN FACT ESTABLISH THAT PLAINTIFF IS A RECOGNIZED EXPERT WHO HAS INDEED RISEN TO THE VERY TOP IN THE FIELD OF ENDEAVOR.

34. The USCIS cites no authority and provides no reason, logical or otherwise to support the claim that the national awards won by the Plaintiff are not nationally or internationally recognized "because they were limited to early career professionals" and "…the record does not show that this fact alone establishes national or international acclaim". There is simply no logical reason why this fact, in and of itself, would cause them to deny the national or international acclaim of these awards. One might speculate that USCIS's interpretation of national or international acclaim is subject to 'red carpet' treatment of awards such as "Oscars" hosted by the Academy of Motion Picture Arts and Sciences; however, USCIS demonstrates their ignorance in recognizing that every field of endeavor may have their respective 'red carpet' events that may or may not be popularized or captured by national or household media. The annual events of ACEC and NSPE are the most respected and coveted events for the engineering profession; the USCIS's refusal to acknowledge these organizations as equal to

the Academy of Motion Picture Arts and Sciences, that presents Oscar or Academy of Television Arts and Sciences that presents Emmy or The Recording Academy that presents Grammy is absolutely without any legal basis. The Kazarian case specifically noted that USCIS "may [not] unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." Kazarian, 596 F.3d at 1121. Since USCIS did not articulate any other basis for rejecting the national awards, USCIS irrationally concluded that "National Young Engineer of The Year" was not probative of the Plaintiff's sustained national acclaim and recognition in the field.

35. USCIS AAO misconstrued the statement in Exhibit 5, Page 4 of 53, *"This is truly a national award, and the fact that it is geared towards those of a certain age does not diminish the fact that this award is only given to those who have made outstanding contributions to the Engineering field"* and incorrectly concluded that the Petitioner did not challenge USCIS Director's determination that the award "were limited to students and early career professionals and did not receive national or international recognition". One might speculate that it is derived from the following comment in the USCIS's Adjudicator's Field Manual (AFM):

> Relevant considerations regarding whether the basis for granting the prizes or awards was national or international recognition for excellence in the field include, but are not limited to:
> - The criteria used to grant the awards or prizes;
> - The national or international significance of the awards or prizes in the field; and
> - The number of awardees or prize recipients as well as any limitations on competitors (an award limited to competitors from a single institution, for example, may have little national or international significance;

AFM 22.2(i)(1)

36. If this is the basis of the USCIS's decision, then it has obviously been completely misconstrued, in the following way.

COMPLAINT - 13

37. First, an institution is not the same as an association or society or council such as National

Society of Professional Engineers or American Council of Engineering Companies. The

Oxford dictionary offers the following (relevant) definitions of an "institution":

> An organization founded for a religious, educational, professional, or social purpose.
> *'an academic institution'*
> *'a certificate from a professional institution'*
> Synonyms
> 1.      1.1 An organization providing residential care for people with special needs.
> *'about 5 per cent of elderly people live in institutions'*
> Synonyms
> 2.      1.2 An established official organization having an important role in a society,
> such as the Church or parliament.
> *'the institutions of democratic government'*

38. So too is apparent that when the AFM refers to an award limited to an "institution" it means

a single, discrete entity, such as a university, a business or a hospital, and not a group of

affiliated organizations, such as accredited colleges or NFL league teams. The use of the word

"institution" can in no way be interpreted to mean that the USCIS did not consider that an

award issued by a "Society of Professional Engineers" or "Council of Engineering companies"

cannot be considered nationally or internationally recognized.

39. Second, in no sense was the statement in the AFM intended to mean that an award issued by

an organization, society or council, could **never** be nationally or internationally recognized.

It merely stated that it "may" not be nationally or internationally recognized. "may" is not the

same as "must", for example a court "may" grant oral argument in a case certainly doesn't

oblige it to do so. Nothing in the AFM authorizes a finding that an award is not nationally or

internationally recognized simply because it was issued by an institution, and for no other

reason.

40. Finally, nothing in the AFM authorizes a finding that an award is not nationally or

internationally recognized simply because it is "limited to early career professionals".

COMPLAINT - 14

41. If the Agency officers or adjudicators are making enormously powerful decisions about a person's life, which in this case is the permanent residency of the Plaintiff based on Plaintiff's highly sought after expertise then shouldn't we be questioning the expertise of the reviewing officer in their ability to conduct analysis in the field of consulting or professional engineering? For instance, the agency lists its hiring criteria for service center adjudicators on USA JOBS[9] and its Adjudicator Field Manual. Surprisingly, the agency does not require its adjudicators have **any** degree, let alone a degree in the specific specialty over which they are adjudicating I-140 extraordinary ability petitions.

42. Plaintiff has gained membership to several highly selective professional organizations that require outstanding achievements of their members as judged by recognized national and international experts – Elected as a Full Member of Sigma Xi, which requires noteworthy achievements of its members, and also earned Senior Member status with the IEEE, a designation that less than 8% of the IEEE membership achieves. USCIS does not dispute that Plaintiff's membership is notable, but draws its own speculation, without being the technical authority in the field of endeavor, that such notable membership that are highly selective does not indicate that Plaintiff is one of the small percentage who has risen to the top of the field. Such memberships are an explicit or at least implicit criteria for selection of national award winners with wide national recognition.

43. For original contributions, USCIS does not dispute the fact that Plaintiff has made original contributions in the field of endeavor. Plaintiff submitted independent testimonies of two

---

[9] https://www.usajobs.gov/Search?a=HSAB&k=officer&p=1

professionals – 1. Original publication that is taught by a nationally renowned code training professional, Tom Pernal with his Tom Pernal Electrical Seminars. Exhibit 1, Page 75 of 476. 2. IEEE Standard: IEEE Medal winner Erling Hesla provided explanation of an IEEE standard that Plaintiff is Chairing for its "global relevance", and the significance of the Chair role and why Plaintiff was selected for the position proving self-evident fact that Plaintiff is in fact in the very top of the field of endeavor. Such original contributions are clear indication that Plaintiff has risen to the very top of in his field of endeavor and gained national praise. AAO draws a preposterous conclusion that "chair of the group working on the prospective [IEEE] standard….. lacks evidence explaining the significance of [his] role and how it shows sustained national or international acclaim". Exhibit 6, page 5 or 7. IEEE standards publication is a world-wide publication from the largest technical organization in the world. The Institute of Electrical and Electronics Engineers Standards Association (IEEE-SA) is an organization within IEEE that develops global standards in a broad range of industries, including: power and energy, biomedical and health care, information technology and robotics, telecommunication and home automation, transportation, nanotechnology, information assurance, and many more. Significance of IEEE 3001.4 standard is explained by Mr. Erling Hesla in his support letter including the significance of the role of a Chair[10] in the IEEE standards development. Exhibit 4, Page 134 of 288.

---

[10] Oxford Dictionary definition of "*chair*": The person in charge of a meeting or of an organization. Merriam-Webster dictionary definition: An office or position of authority or dignity. Similar to U.S. House Committee on the Judiciary, Subcommittee Immigration and Citizenship, *Chair* Zoe Lofgren from California.

COMPLAINT - 16

44. Plaintiff's publications or publications featuring the Plaintiff are all major trade publications such as Engineering, Inc., PE Magazine, EC&M Journal, IEEE Publications. The courts have found it to be "self-evident that the website of the world's premier professional bull riding association is a major publication for professional bull riding." *Eguchi v. Kelly*, Civil Action No. 3:16-CV-1286-D, 2017 U.S. Dist. LEXIS 104974, at *10 (N.D. Tex. June 23, 2017) and that the National Hockey League's ("NHL's") own magazine was major trade publication. *Muni v. I.N.S.*, 891 F. Supp. 440, 444 (E.D. Ill. 1995).

45. For leading or critical role, USCIS does not dispute or challenge that the Plaintiff does not have a leading or critical role with the firm. However, USCIS AAO ignored and missed important explanation in SMRT President Ellen Belknap's letter that provides further details that led to the leading and critical role with the firm. In that, USCIS specifically failed to take into account with respect to record as a whole, that a leading and critical role in a nationally recognized Architecture and Engineering firm, at an early age, is achieved by evidence of extraordinary ability along with strong supporting evidence of national honors, publications, and testimonies of highly respected industry experts from all over the nation. SMRT's President highlights these achievements in her letter specifically written to USCIS. Exhibit 3, page 76 of 288.

46. For High Salary in relation to others in the field, USCIS acknowledges that the Plaintiff met the criteria, however, again without any legal basis claims that such evidence does not reflect that the Plaintiff is in the small percentage who has risen to the top of the field. Exhibit 6 at page 6 of 7. The question then is, why would or should a firm compensate any engineer, significantly more than the industry? Unless the engineer has an extraordinary talent in the field of endeavor, and specifically when the firm's President confirms, in-writing to USCIS,

COMPLAINT - 17

the extraordinary talent including leading and critical role. This is exactly why the United States Congress intended to make a provision for "priority workers", first preference, pursuant to 8 U.S.C. § 1153(b)(1)(A), where an all-American nationally reputed Architecture and Engineering firm is able to obtain immigration benefit for the Plaintiff with USCIS by recognizing the extraordinary ability of the Plaintiff that will substantially benefit prospectively the United States.

47. USCIS has misconstrued the letter of support written in support of the petition that addresses the issue of "risen to the very top in the field" and "national acclaim" (Oxford dictionary synonym of acclaim is praise). Dr. Isik who is the interim Dean of the College of Engineering at Syracuse University and one of the top research professors in the nation writes that he is supporting the Plaintiff as an individual with extraordinary ability and one who is in the top 1% in the field of endeavor. Dr. Isik praises Plaintiff's national recognition and states that "Such accomplishments are out of the ordinary.... Outstanding results in Academics, Research and community involvement". IEEE Medal recipient Erling Hesla, writes "Mr. Bodhankar leads a working group comprised of influential leaders and experts in the electrical industry....", further he explains how Plaintiff got selected as the Chair of the IEEE standard "After searching within the [IEEE] committee, within ICPS, within IAS, and among outside professional engineering whom I know here [United States] and abroad, I found no one available who surpassed Mr. Bodhankar". Further, Mr. Hesla details how "Without question IEEE Standard 3001.4 has global relevance" and is followed and referenced by engineers all across the globe. NCEES (National Council of Examiners for Engineering and Surveying) Chairman for Electrical Power Committee, Mr. Kevin Knocke, in his letter explains the highly selective process to join a national panel, in which, he explains that invitation is based on a

proven track record of an individual and that the individual is considered the best in the electrical consulting industry. He writes "Mr. Bodhankar adds tremendous value to not only [NCEES]'s mission but to the field of engineering and specifically to the field … electrical engineering". Further, Chairman Knocke adds, "I have no double that his outstanding work and extraordinary ability will benefit our [United States] country as it is already benefitting our engineering community." Chief Executive Officer of NCEES, Jerry Carter, confirms that Plaintiff is contributing electrical expertise as a panelist at a national level. Mr. Alan Mooney who is the highest authority in the electrical engineering design decision making (AHJ – Authority Having Jurisdiction) and Lead Senior Electrical Engineer at a world's leading research center – General Electrical Global Research Center (GE-GRC) writes in his letter "He [Mr. Bodhankar] is considered the leading expert in electrical consulting engineering with much experience and a skillset that very few electrical engineering in the world can match. Mr. Bodhankar has clearly risen to the top 1 percent of all the electrical engineers in the field.". Mr. Parrow, who has first-hand knowledge of Plaintiff's skills for past twelve [12] years has concluded with examples such as "several design presentations to numerous clients and organizations all across the country. Today, word of his work continues to extend to clients and agencies around the nation", he adds "I would classify without a doubt that Mr. Bodhankar is one of the top one percent of all the engineers who have risen to the very top of the field so rapidly". Mr. Zahn, who represents HRP, a global environmental consulting firm writes "HRP and [along with] their client NYOGS (New York State Office of General Services) wish to retain the best in the industry for projects that involve public safety" and adds "During interview [with NYOGS] , the [NYOGS] representatives applauded Mr. Bodhankar's electrical designs". Former Chair of the Electrical Department of HVCC

COMPLAINT - 19

(Hudson Valley Community College), Mr. Porter writes "[Mr. Bodhankar] is already a leading expert in Electrical Engineering….." and believes "Mr. Bodhankar's extraordinary work and exceptional talent will add great value to the field of electrical engineering in the United States". These are not just laudatory letters written without objective, but each letter details the contributions of Plaintiff and why the experts came to a conclusion of their unwavering support of Plaintiff's extraordinary talent in engineering.

48. 5 U.S.C. § 706 provides in relevant part that in an action for judicial review under the Administrative Procedure Act

> The reviewing court shall—
> (1) compel <u>agency action</u> unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside <u>agency action</u>, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

49. An irrational decision is arbitrary and capricious. *Dunlop v. Bachowski*, 421 U.S. 560, 574-75, 44 L. Ed. 2d 377, 95 S. Ct. 1851 (1975) (citations omitted) *overruled in not relevant part by Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 549-50 n. 22, 81 L. Ed. 2d 457, 104 S. Ct. 2557 (1984).

50. The USCIS's decision to deny this petition because it found that the national awards won by the Plaintiff, awarded by the highest authorities in consulting and professional engineering, despite being covered by major trade publications, merely because it is limited to early career professionals was irrational and so arbitrary and capricious in that the limitations of the winners of these awards to such members and participants bears no logical relationship to the question of whether the awards are nationally or internationally recognized, and is in fact contrary to the plain language of these terms.

51. The USCIS's decision to deny this petition because it does not consider the Plaintiff in the very top of the field of endeavor, despite testimonies by highly respected experts and

COMPLAINT - 20

authorities in the industry, memberships to highly selective and esteemed organizations, scholarly articles and original contributions in the field of endeavor, leading and critical role in the firm, and commanding high salary, was irrational, arbitrary and capricious as the totality of evidence clearly demonstrates the Plaintiff's extraordinary ability in the field of endeavor.

### STATEMENT OF RELIEF SOUGHT

Inasmuch as the decision in this matter is arbitrary and capricious, and not in accordance with law, it should be held unlawful and reverse the denial of I-140 petition.

Respectfully Submitted,

Dated: 14th of June, 2019.

Nikhil U. Bodhankar
Pro se Litigant – Plaintiff

**EXHIBIT LIST**

| | |
|---|---|
| 1. Initial Petition | - Page# 1 – 476 |
| 2. Request For Evidence (RFE) | - Page# 1 – 11 |
| 3. Response to RFE | - Page# 1 – 288 |
| 4. Decision from USCIS Nebraska Service Center | - Page# 1 – 7 |
| 5. Appeals Brief to Administrative Appeals Office (AAO) | - Page# 1 – 53 |
| 6. Decision from USCIS Administrative Appeals Office (AAO) | - Page# 1 – 7 |

COMPLAINT - 21